# Francis *v.* Ardmore & Llanerch Street Ry. Co., Appellant.

*Negligence—Street railways—Automobiles—Collision.*

In an action against a street railway to recover damages for personal injuries to a driver of a motor truck, the case is for the jury where the evidence for the plaintiff although contradicted tended to show that plaintiff stopped his truck within two feet of the track when he made his first and the only observation that could be made, that no car was then in sight, that he then started at a speed of two miles per hour, to cross the track obliquely, that when his first wheel was on the track he noticed the electric car 300 feet away, that his truck then traveled twenty-seven feet when it was struck, that the car was running at a high rate of speed, and that the motorman had an opportunity to notice the motor truck for a distance of from four to five hundred feet.

Argued Dec. 5, 1916. Appeal, No. 186, Oct. T., 1916, by defendant, from judgment of C. P. Montgomery Co., Dec. T., 1914, No. 68, on verdict for plaintiff in case of Harry H. Francis v. Ardmore & Llanerch Street Railway Co. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ, Affirmed.

Trespass to recover damages for personal injuries. Before MILLER, J.

The facts are stated in the opinion by MILLER, J., as follows:

No reasons were filed in 'support of the motion for a new trial, it was not argued, nor is it pressed. It is therefore overruled.

Counsel for the defendant do, however, earnestly argue that its motion for judgment non obstante veredicto should be allowed.

Sheldon avenue is a highway extending in a generally northerly and southerly direction in Ardmore, Lower Merion Township, in its course crossing Elm and Spring avenues, which are about 600 feet apart, and itself is about twenty-four feet in width from fence line to fence line. The single track line of the defendant company extends along its bed from below Spring avenue northerly to a point near Elm avenue, where it gradually curves to the right and, leaving the avenue, enters and continues upon private land. This track is approximately straight from a point opposite the gateway soon to be mentioned, for a distance northerly of about 400 feet and is laid at a slight up grade.

Late in the afternoon of September 12, 1914, the plaintiff, while seated at the wheel on the right hand end of the front seat of his auto car truck, with two other men on the seat beside him and a third in its body with his back to his companions, started from his stable down an incline in his driveway leading from the rear of .his premises into Sheldon Lane from the west. The driveway passes through double gates or doors, swinging outwardly into the lane, and these gates are part of an eight-foot high board or wooden fence which separates plaintiff's premises from the highway.

Because of the down grade and heavy vehicle he moved slowly and, being familiar with his surroundings, it was testified that, when his face had passed beyond

the fence line by a foot, he brought the truck to a full stop.

At this point and with all curtains on the truck up it was also shown that he looked to his left, or toward Elm avenue, in which direction he testified that he could see, without obstruction, for a distance of at least 300, and possibly, 511 feet, and to his right and did not see or hear a car coming from either direction.    ·

The distance from the fence line to the nearer rail of the trolley track is 11 feet.  His face was, as stated, one foot outside the fence line and the front portion of his truck extended at least five or six feet further—the testimony being that "the bumper was seven feet."

His truck, at its nearest portion, was therefore within four or five feet of the rail, which distance would be further reduced by at least a foot by the overhang of a passing trolley car.

As to the fact and location of the stop and that plaintiff there looked and listened, as described, he was corroborated by the testimony of a number of other witnesses.

It should also be noted that, because of a bank and gutter between the board fence in the rear of plaintiff's premises and the trolley track, those portions of the bed of the lane lying between the rails and beyond the same were, and had to be used for vehicle traffic and that the distance between the rails was five feet and two and one-fourth inches and from the outer rail to the fence on the opposite side of the lane eight and seven-tenth feet.

Thus satisfied that there was no car in sight and it was safe to attempt the crossing and desiring to reach Spring avenue, to the south, the plaintiff threw his clutch into first, or low, gear and, at a speed of about two miles per hour, started across the track at the same time turning or curving to his right.

The plaintiff also testified that after he had started he again looked, but without again stopping, and saw a trolley car coming from the direction of Elm avenue and

that it was then 300 feet away, but he was uncertain as to whether or not he was then actually on the track and in the act of crossing.

He also claimed that after the right hand front wheel of his truck had traversed a distance of twenty-seven and one-half feet from the fence line in the gateway and when it, with the left hand rear wheel, was still between the rails, with the left hand front wheel all the way across and the right hand rear not yet over the nearer rail, the truck was struck by this trolley car, which came from the north, and, by reason thereof, the plaintiff suffered the injuries for which he claims in this suit.

The defendant claimed at the trial and, by a number of witnesses, attempted to show that the plaintiff neither stopped nor looked for an approaching car, as he emerged from the gateway and entered on the track and that the gate on plaintiff's left, swinging outwardly as stated, was only partly open, at the time, thereby serving as an obstruction to plaintiff's vision, even had he looked toward Elm avenue.

The verdict was in the plaintiff's favor. It is now urged that the court declare plaintiff guilty of contributory negligence, under the testimony, in that he did not look for an approaching car immediately before entering upon the track, at the edge of the track or before committing himself to the crossing.

Because of the conflict of testimony on the subject as disclosed by an examination thereof, as transcribed, we are unable to do so, as a matter of law.

The wholesome and well settled rule that one about to cross the track of a street railway at grade must look for an approaching car immediately before he goes upon the track or commits himself to the crossing, wisely adopted and now permanently fixed as the law, is intended to safeguard both those about to cross and in the trolley car which, in its passage, is necessarily confined to its track on which, in a sense, it has the superior right.

We are, of course, bound by the law, as stated, and should not be inclined to relax it in the least even had we the power to do so.

But we do not so understand this rule as, in any sense, to require the use of a mathematical instrument in finding the meaning of the word "immediately" as used therein. It is to be reasonably applied and where there is any real doubt as to the fact it would seem to be not only safe, but required, that the question of the plaintiff's negligence shall be referred to the jury.

We are, therefore, not prepared to hold as a matter of law that under the testimony in this case the plaintiff failed to look for an approaching car immediately before entering upon the crossing.

The following from the opinion of Mr. Justice POTTER in Mackey, Appellant, v. P. & W. C. Traction Co., 227 Pa. 482 (see page 487), would seem to have especial application to the case at bar:

"Contributory negligence upon the part of the driver of the team in such a case as this, can only properly be so pronounced by the judge as a matter of law, when the evidence is clear and undisputed, that in attempting to cross the tracks, he has driven in front of an approaching car, when it was so near to him that the motorman could not reasonably be expected to stop his car in time to prevent the collision. But when there is testimony, as in this case, that with a long and unobstructed view of the tracks, no car was to be seen when the driver reached the edge of the line, and that the space between the point where a possible approaching car would appear and the line of the crossing was such as would seem ample under ordinary circumstances to permit of safe passage; when, notwithstanding such an alleged situation, during an attempted crossing of the tracks, a collision occurs, it seems to us that the question of negligence and contributory negligence should properly be left to the determination of the jury."

See Clift v. Philadelphia & W. C. Co., appellant, 52

502 FRANCIS *v.* ARDMORE & L. ST. RY. CO., Appellant.

Pa. Superior Ct. 502, and, for a case in which, when the plaintiff looked, an approaching car was actually in sight and only 250 or 300 feet distant, yet it was decided that the question of his negligence properly should have been left to the jury. See also Klingmann, Appellant, v. Pittsburgh Railways Co., 252 Pa. 12.

The question of plaintiff's contributory negligence was properly left to the jury. While the defendant did not at the argument so earnestly urge that negligence on the part of the employees was not sufficiently shown, it nevertheless also pressed this point.

Sufficient is it to say that there was such a conflict in the testimony on the subjects of the speed of the car, the length of time during which the auto truck was in full view of the motorman, the ability of the latter to stop his car, and the warning or signal given of its approach as to require this question, too, to go to the jury.

And now, May 1, 1916, the motion for judgment for the defendant non obstante veredicto is also overruled and judgment is ordered to be entered in favor of the plaintiff on payment of the verdict fee.

Verdict and judgment for plaintiff for $647.04. Defendant appealed.

*Error assigned* was in refusing motion for judgment for defendant n. o. v.

*Franklin L. Wright,* with him *C. Townley Larzelere* and *Nicholas H. Larzelere,* for appellant.

*Theo. Lane Bean,* for appellee.

OPINION BY KEPHART, J., March 16, 1917:

From a careful review of the evidence in this case, the facts as narrated by the court below, in its opinion overruling the motion for judgment n. o. v., are well founded on inferences fairly deducible from the plaintiff's testimony. The rule of law that a person driving a vehicle,

in attempting to cross a street car track, must look for approaching cars before he commits his carriage to the act of crossing, was observed by the plaintiff in this case. He says that his motor truck was stopped within two feet of the path of the car when he made his first and only observation that could be made. He and his witness testified that no car was then in sight. It was no neglect of duty to start his car on low gear, at a speed of two miles an hour, to cross the track obliquely, and reach the narrow road on the opposite side. While he was in the act of crossing, as his front wheel was on the track, he noticed defendant's car three hundred feet away. His car traveled twenty-seven feet when it was struck by the approaching car. There was ample evidence of the defendant's negligence in running the car at a high rate of speed, and in not placing it under control, to submit the case to the jury. The defendant, for a distance of from four to five hundred feet, had an opportunity to observe the position of the motor truck, and to bring the car under control, thereby preventing the collision. We appreciate the force of appellant's argument, but it must not be forgotten that the evidence was contradictory both as to the location of the motor truck and as to whether any observation was made and the speed of the car. The court could not, as a matter of law, say that the plaintiff was guilty of negligence, or that his witnesses were not to be believed. The position of his truck, standing two feet from the path of the car when he made his observation, was sufficiently close for the jury to say that an inspection at this point was an inspection made before being committed to the act of crossing: Cathcart v. Philadelphia Rapid T. Co., 62 Pa. Superior Ct. 215; Klingmann v. Pgh. Rys. Co., 252 Pa. 12.

The judgment of the court below is affirmed.